IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| PATRICIA S. THURLO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 05-5108-CV-SW-GAF-SSA |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

On January 7, 2000, plaintiff Patricia S. Thurlo filed an application seeking disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. Plaintiff's application for disability insurance benefits was denied after initial administrative review. On March 30, 2001, following a hearing, an administrative law judge (ALJ) rendered a decision in which he found that plaintiff was not under a "disability" as defined in Title II at any time through the date of the decision.

On August 20, 2001, the Appeals Council of the Social Security Administration denied plaintiff's request for review of the ALJ's decision. Thereafter, plaintiff sought judicial review of the ALJ's March 30, 2001 decision. On June 12, 2002, this Court remanded plaintiff's case for further consideration. Subsequently, on September 18, 2002, the Appeals Council remanded this case for further proceedings in accordance with the Court's order.

While plaintiff's first application was pending, on August 31, 2001, she filed a second application for disability insurance benefits under Title II. This application was also denied after

initial administrative review. A hearing was then conducted before an ALJ. Prior to the issuance of any decision, however, plaintiff's first application was remanded. Consequently, the applications were consolidated and a third hearing was conducted by an ALJ. Following the conclusion of the third hearing, on June 23, 2004, the ALJ rendered a decision in which he found that plaintiff was not under a "disability" as defined in Title II at any time through the date of the decision. More specifically, the ALJ concluded that plaintiff, even taking into account her impairments, retained the residual functional capacity (RFC) to perform her previous relevant work as a electrocardiogram technician, fast food worker, sewing machine operator, and crimping machine operator. On June 17, 2005, the Appeals Council denied plaintiff's request for review of the ALJ's decision.

In *Shelton v. Chater*, 87 F.3d 992 (8th Cir. 1996), the Eighth Circuit discussed the scope of judicial review of a final decision of the Commissioner of Social Security, succinctly summarizing:

> We must affirm the Commissioner's decision if substantial evidence exists to support the ALJ's determinations when the record is viewed as a whole. Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion. We do not reweigh the evidence or review the factual record de novo. If the record evidence could support two inconsistent positions and one of them represents the Commissioner's findings, we must affirm the Commissioner's denial of benefits.

*Id*. at 995 (citations omitted). *Accord Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989). A reviewing court's review of an administrative decision to deny Social Security benefits is limited and is deferential to the agency. *Ostronski v. Chater*, 94 F.3d 413, 416 (8th Cir. 1996).

To establish entitlement to benefits based upon disability, plaintiff must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable impairment which can be expected to end in death or which has lasted or can be expected to last for a

2

continuous period of not less than 12 months. 42 U.S.C. §§ 416(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The 12-month "duration" requirement applies to a claimant's "inability to engage in any substantial gainful activity," not just to his or her underlying impairment(s). *Barnhart v. Walton*, 535 U.S. 212, 218, 122 S.Ct. 1265, 1270 (2002).[1]

For entitlement to disability insurance benefits under Title II, plaintiff had the additional burden of showing that she was disabled as defined by the Act prior to the expiration of her insured status on March 31, 2004. *Pyland v. Apfel*, 149 F.3d 873, 876-77 (8th Cir. 1998). A non-disabling condition which later develops into a disabling condition after the expiration of a claimant's insured status cannot be the basis for an award of disability benefits under Title II. *Thomas v. Sullivan*, 928 F.2d 255, 260-61 (8th Cir. 1991). Thus, the relevant period for plaintiff's applications is December 9, 1999 through March 31, 2004.

The ALJ found that plaintiff had degenerative joint disease, right knee; mild degenerative disc disease; fibromyalgia syndrome; allergy to rubber and black dye; and depression, impairments that were severe. Plaintiff did not have any impairment or combination of impairments that met or equaled any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing of Impairments. The ALJ further found that plaintiff had the RFC during the relevant period to:

> perform work that does not require the lifting and carrying of more than 20 pounds occasionally or 10 pounds frequently, and does not require exposure to rubber or black dye.

---

[1] Upon review of the record and applicable authority herein, defendant's position is found to be controlling. Much of the defendant's brief is adopted without quotation noted.

3

Case 3:05-cv-05108-GAF   Document 10   Filed 03/08/06   Page 3 of 16

The ALJ additionally found that plaintiff was able to perform her past relevant work as an electrocardiogram technician, fast food worker, sewing machine operator, and crimping machine operator. The ALJ finally found that plaintiff's allegations regarding her limitations were not totally credible for the reasons set out in his decision.

Plaintiff argues that the ALJ improperly found that her depression was not severe because he did not give the treating therapist's opinion any weight. Plaintiff argues that the ALJ should have obtained a consultative psychological examination because it is required when the only evidence of an impairment is the claimant's testimony.

Plaintiff argues that the ALJ failed to get proper testing and so was not able to "properly determine if plaintiff's problems with depression were severe enough to meet a listing or preclude other work." In this regard, depression does not have to "meet a listing or preclude other work" in order to be found to be severe. It only needs to cause more than minimal limitations. The ALJ found that plaintiff's depression was severe, considered it in accordance with the technique required by regulations, and indicated that plaintiff would have mild mental limitations in the area of concentration, persistence or pace. Further, there was medical and non-medical evidence about plaintiff's depression and there was no indication that the ALJ needed to get further evidence of depression from a consulting source.

Plaintiff argues that the ALJ erred because he accorded little or no weight to the MEDICAL SOURCE STATEMENT-PHYSICAL ("MSS-P") forms completed by R.I. Patel, M.D.,[2] and by giving

---

[2] Dr. Patel's progress notes are largely illegible. Although remand gave plaintiff an opportunity to obtain legible notes from Dr. Patel, she did not do so.

4

no weight to the MEDICAL SOURCE STATEMENT-MENTAL ("MSS-M") completed by "Dr. Hetz." Dr. Hetz is not a physician or a psychologist. Plaintiff argues that Dr. Patel's opinions were entitled to controlling weight.

Dr. Patel, plaintiff's long-time family practitioner, saw plaintiff for general health concerns. He completed three different MSS-P's. In 2000, Dr. Patel opined that plaintiff could lift and/or carry 10 pounds frequently or occasionally, stand and/or walk for 2 hours during an 8-hour workday, and sit for 45 minutes at one time. He did not complete the item to indicate how long plaintiff could sit throughout a workday. He indicated that plaintiff would need to lie down or recline 4 or 5 times during a workday for 2 to 3 hours at a time. This answer contradicts the rest of the MSS-P because it indicates that plaintiff would need to lie down or recline from 8 to 15 hours during an 8-hour workday. In addition, without explanation, Dr. Patel indicated that plaintiff could "never" see, speak, or hear.

In 2002, Dr. Patel completed a MSS-P in which he opined that plaintiff could lift and/or carry 5 pounds occasionally and less than 5 pounds frequently, stand and/or walk for only 15 minutes without a break and for 2 hours during an 8-hour workday, and could sit continuously for only 30 minutes and for only 4 hours total during an 8-hour workday. She would need to lie down or recline 1 to 2 times a day for 3 hours each time during an 8-hour day. Inconsistently, needing to lie down or recline for 3 to 6 hours out of an 8-hour workday does not leave time for standing, walking, and/or sitting for 6 hours. Dr. Patel opined that plaintiff's pain, medication, and/or side effects did not cause a decrease in her concentration, persistence, pace, or any other limitation.

5

In 2004, Dr. Patel completed his third MSS-P in which he opined that plaintiff could lift and/or carry 10 pounds occasionally and less than 5 pounds frequently, stand and/or walk for only 15 minutes at a time and for 3 hours during an 8-hour workday, and sit for 2 hours continuously and for 6 hours during an 8-hour workday. He did not indicate that plaintiff had a need to lie down or recline during the workday or that pain, medication, or and/or side effects caused any additional limitation.

The ALJ did not give controlling or great weight to Dr. Patel's opinions because he was a family practitioner, his opinions were not supported by his office notes, and his opinions appeared to be based solely on plaintiff's discredited subjective complaints. Limitations may be discounted when they are based upon subjective complaints which the ALJ has found not credible. *Gaddis v. Chater*, 76 F.3d 893, 895-86 (8th Cir. 1996). Further, the ALJ found that Dr. Patel's assessments were not consistent with the opinions of examining specialists who examined plaintiff at the request of Dr. Patel or the State agency. The Eighth Circuit has encouraged the Commissioner to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist. *Singh v. Apfel*, 217 F.3d 586, 591 (8th Cir. 2000) (citing *Metz v. Shalala*, 59 F.3d 374, 377 (8th Cir. 1995)). Where, as in this case, a treating physician's opinion is not well-supported and is inconsistent with other substantial evidence, it is not entitled to controlling weight. *Hogan v. Apfel*, 239 F.3d 958 (8th Cir. 2001).

Additionally, when Dr. Patel completed a Division of Family Services Foster/Adoptive Family Report for plaintiff on February 26, 2004, he listed her only impairment as hypertension. Dr.

6

Patel also indicated that plaintiff's general health was "good" and her general emotional health was "good," an assessment casting doubt on his MSS-P reports.

With respect to her right knee, plaintiff did not complain of a right knee impairment in her applications. Nonetheless, the ALJ found that plaintiff had degenerative joint disease in her right knee. The record reflects that plaintiff first complained of right knee pain on January 2, 2001, but a right knee x-ray was unremarkable. On January 29, 2001, J.T. Ogden, M.D., performed a right knee arthroscopy with debridement of hypertrophic synovitis. After instruction in home exercises and gait and stair training, plaintiff did "extremely well" and did not week treatment for knee pain.

On March 8, 2001, Dr. Ogden completed a MSS-P in which he opined that plaintiff could lift and/or carry 20 pounds frequently or occasionally, stand and/or walk for 2 hours at a time and for 6 hours throughout an 8-hour workday, and could sit for 4 hours at a time and for up to 8 hours during an 8-hour workday. Dr. Ogden opined that plaintiff's ability to push/pull was unlimited, and she could frequently climb, balance, kneel, crawl, reach, and handle. She could occasionally stoop and crouch. Dr. Ogden indicated that plaintiff had no need to lie down or recline to alleviate symptoms during an 8-hour workday. Dr. Ogden further opined that plaintiff's pain, use of medication, or medication side effects did not cause any other limitation.

With regard to any back and neck impairments, plaintiff did not report back or neck pain as an impairment in her first application. In her second application, she reported that she had arthritis of the spine but had to quit her job because of her hand problems. The ALJ found that plaintiff had mild degenerative disc disease. On May 16, 2001, Hish S. Majzoub, M.D., Joplin Neurosurgical

7

Associates, Inc., examined plaintiff at Dr. Patel's request to evaluate her for back pain. Dr. Majzoub reported:

> The neurological examination revealed the patient to walk with a steady gait. Her speech was clear. The cranial nerve examination was essentially within normal limits. He neck was supple. Her cerebellar testing was negative. Motor and sensory examination revealed no deficit. Her reflexes were ½+. Her hip flexion and Patrick's tests were positive on both sides. The straight leg raising test was positive on both sides. Her spine examination also revealed tenderness over her lumbar spine. Forward bending was full to 50 degrees.
>
> Review of her x-rays of her lumbar spine that were taken at Freeman on 4/13/01 revealed slight degenerative disc disease and arthritis.
>
> Her MRI of her lumbar spine done on 4/13/01 at Freeman revealed slight facet arthritis at L3-14 and L4-5 but no canal stenosis. She also has slight disc bulge at L5-S1 but no canal stenosis and no disc herniation.
>
> We feel that the patient has slight facet joint disease but did not have any disc herniation and no stenosis.

Dr. Majzoub saw nothing requiring surgery and he recommended plaintiff try therapy, exercise, or epidural steroid injections. He gave plaintiff a book of exercises.

On October 25, 2001, Melvin Karges, M.D., examined plaintiff at Dr. Patel's request for her complaints of low back pain and neck pain. Physical examination revealed that plaintiff's cervical spine flexion, extension, rotation, and lateral bending were intact. Lateral trunk flexion and forward bending were within normal limits. Standing posture was normal and she had a normal gait pattern. Straight leg raising test was negative bilaterally. There were no leg length discrepancies, and rotation of her hips was normal. Deep tendon reflects were 2/4 and dorsalis pedis pulses were

intact. Dr. Karges opined that plaintiff probably had fibromyalgia and recommended further testing. Subsequent laboratory test results were normal or negative for CBC, liver enzymes, thyroid profile, rheumatoid screen, ANA screen, and uric acid. Sedimentation rate was elevated at 36. Dr. Karges' impression was diffuse musculoskeletal pain consistent with fibromyalgia syndrome and he prescribed water exercise. Plaintiff had excellent results from the water therapy, reporting decreased pain and increased relaxation. She was to continue water therapy at the YMCA heated pool, but she terminated this therapy after a couple of months.

On January 14, 2002, Kevin D. Komes, M.D., a Physical Medicine and Rehabilitation specialist, examined plaintiff. Dr. Komes found that plaintiff had a full range of motion in all joints, with no limitation in moving about. Dr. Komes opined that plaintiff had no impairment that would significantly impact on her ability to engage in work activity.

On November 3, 2003. Charles J. Ash, M.D., examined plaintiff at the request of the State agency. Plaintiff stood erect and moved without a limp or a list. She walked on heels and toes satisfactorily. He leg lengths were equal and she could squat 75 percent of normal. Plaintiff had no difficulty arising from the examining table and chair, or with dressing or undressing. Examination of plaintiff's cervical, thoracic, and lumbar spine revealed slight limitation of motion, with tenderness throughout, and no muscle spasm or deformity. Plaintiff had normal ranges of motion in her extremities. Dr. Ash's diagnosis was fibromyalgia syndrome, but he commented that the "[f]indings are basically subjective."

Dr. Ash completed a MSS-P, based on his objective findings only, in which he opined that plaintiff could lift and/or carry 10 pounds frequently and 20 pounds occasionally, stand and/or walk

9

for about 6 hours out of an 8-hour workday, and sit for 6 hours out of an 8-hour workday. There were no limits to pushing and/or pulling, and plaintiff could frequently climb, balance, kneel, crouch, crawl, and stoop. She had no manipulative, visual, communicative, or environmental limitations.

Finally, an orthopedic medical expert, Dr. McCows, testified at plaintiff's 2004 hearing. Dr. McCows testified that he saw no evidence that plaintiff had a serious back problem. Dr. McCows testified that Dr. Ash's MSS-P placed more restrictions on plaintiff's RFC than he would place on plaintiff, indicating that she could perform more than light work.

As to plaintiff's skin allergy impairment, on January 18, 2000, Mark S. Matlock, M.D., a dermatologist, examined plaintiff for a recent flare up of her hand eczema. Plaintiff was considering finding other employment as her employer had told her that "this is her problem." Dr. Matlock opined that plaintiff's dermatitis would clear with treatment if she avoided the allergens.

Considering the record as a whole, the ALJ gave sufficient legal reasons for not giving Dr. Patel's assessments great or controlling weight. The ALJ's decision is supported by the evidence as a whole. Where there are conflicting medical opinions, it is the ALJ's province to resolve the conflict. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

With regard to any mental impairments, although she did not complain of depression at the time she filed either of her applications, on November 1, 2001, plaintiff called to say that she was going to seek treatment for depression due to her physical problems, but she denied that her depression prevented work. On November 2, 2001, plaintiff reported she had been depressed all her life, worse in the last two years, and she had been unable to work. She began therapy with Jeanette Hetz at College Skyline Center on September 26, 2001, and continued until February 13,

10

2002. Plaintiff talked primarily about family problems and responsibilities. The March 2, 2002 entry indicated that plaintiff wanted to return to counseling but "needs to pay part of bill-financial hardship."

On October 30, 2002, Therapist Hetz completed an MSS-M in which she indicated that plaintiff would be either markedly or extremely limited in 14 of 20 areas, although she noted that she had not seen plaintiff since February 13, 2002. Defendant notes initially that a medical source statement is a statement by an acceptable medical source. 20 C.F.R. § 404.1527. Therapists are not acceptable medical sources. 20 C.F.R. § 404.1513. A statement by an "other" medical source is not entitled to controlling weight, but it may be considered in determining the severity of an impairment and how it affects a claimant's ability to work. *Id*.

The ALJ found that Therapist Hetz' assessment was "markedly inconsistent" with her contemporary session notes and with Dr. Kory's notes, and she had not seen plaintiff for eight months. The ALJ noted that an individual with the marked and extreme limitations assessed by Therapist Hetz would need to be hospitalized. Therapist Hetz' notes consist almost entirely of plaintiff's complaints and reflect no advice or counseling except for plaintiff to learn to say "no" to family requests. The record supports the ALJ's decision not to give great weight to Therapist Hetz' assessment. The ALJ properly considered the medical evidence and the medical source statements. In addition, the decision about whether a claimant is disabled is an administrative decision reserved for the Commissioner. 20 C.F.R. §404.1527(e).

Although plaintiff does not attack the ALJ's credibility finding directly, her argument that the ALJ ignored her testimony implies this argument. It is the ALJ's responsibility to determine a

11

Case 3:05-cv-05108-GAF   Document 10   Filed 03/08/06   Page 11 of 16

claimant's RFC based on all relevant evidence. Before determining a claimant's RFC, the ALJ must first evaluate the claimant's credibility. *Pearsall v. Massanari*, 274 F.3d 1211, 1217-18 (8th Cir. 2001).

An individual's complaints are not conclusive evidence of disability and the Commissioner is not bound by a claimant's testimony. *Rautio v. Bowen*, 862 F.2d 176, 180 (8tyh Cir. 1988). Subjective complaints are recognized as disabling when they are not remediable and preclude the claimant from engaging in any form of substantial gainful activity. *Cruse,* 867 F.2d at 1186; *Benson v. Mathews*, 554 F.2d 860, 863 (8th Cir. 1977). The mere fact that working may cause a claimant pain or discomfort does not mandate a finding of disability. *Johnson v. Chater*, 108 F.3d 942 98th Cir. 1997); *Cruse*; 867 F.2d at 1186. It is for the Commissioner to weigh the evidence and assess the claimant's credibility. If there are inconsistencies in the evidence as a whole, the Commissioner may disbelieve subjective testimony. *McKinney v. Apfel*, 228 F.3d 860, 864 (8th Cir. 2000).

The ALJ stated that his assessment of plaintiff's complaints was made in accordance with the requirements set out in regulations and *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In addition to considering the evidence, the ALJ observed plaintiff's testimony and demeanor at the hearings. In *Johnson v. Apfel*, 240 F.3d 1145 (8th Cir. 2001), the court said that "[t]he ALJ's personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations." *Id*. at 1147-48 (*citing Smith v. Shalala*, 987 F.2d 1371, 1375 (8th Cir. 1993)).

The ALJ noted that plaintiff's activities at the time of the 2004 hearing included the assumption of the care of three grandchildren, ages 11, 6 and 4. At her first hearing, plaintiff

testified that she was able to care for her own personal needs if her hands were okay and that she could do laundry, pick up around her house, make her bed, cook, drive, fix something to eat, load the dishwasher, and carry light sacks of groceries. She enjoyed reading and watching television. Plaintiff took care of a three-year old granddaughter two hours per day. She said she could life 20 pounds. *Hutton v. Apfel*, 175 F.3d 651, 654 (8th Cir. 1999), the court found the record supported the ALJ's finding that Hutton's subjective complaints of disabling pain were not credible to the extent alleged, based upon her inconsistent daily activities (making breakfast, washing dishes, washing clothes, visiting with friends, watching television, and driving an automobile).

The ALJ also considered plaintiff's earnings record, which was spotty. An ALJ may discount a claimant's credibility based upon her poor work record. *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (sporadic work record failed to support a claimant's credibility). The ALJ considered plaintiff's motivation and the medical evidence that documented that she had no muscle atrophy or spasm, no sensory or motor deficit, no reflex abnormality, no gait disturbance, and no reduced range of motion. The ALJ noted that plaintiff had not been prescribed other pain modalities such as a transcutaneous electrical nerve stimulation (TENS) unit, a back brace, an assistive device, or been referred to a pain clinic. Plaintiff had not required aggressive medical treatment, frequent hospitalization, or surgical intervention.

In addition, the ALJ noted that the reasons plaintiff stopped work was because of her skin problems with exposure to rubber and black dye due to allergies. Although Dr. Matlock indicated that plaintiff's skin condition would clear if she avoided these products, the ALJ noted that plaintiff had not looked for other work or returned to past work that did not involve exposure to rubber or

13

black dye.  The motivation of the claimant may be questioned in light of her work record.  *Ownbey v. Shalala*, 5 F.3d 342, 345 (8th Cir. 1993).  Considered as a whole, the record supports the ALJ's credibility finding.  The Eighth Circuit has noted that when the ALJ has referred to the *Polaski* considerations and cited inconsistencies in the record, he may properly find a claimant not credible.  *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000).

Plaintiff argues that the RFC found by the ALJ was unrelated to any testimony or medical evidence.  However, as is set out above, the ALJ's RFC finding is supported by Dr. Ogden's report, Dr. Komes' report, Dr. Ash's report, Dr. Matlock's report, Dr. Majzoub's report, and Dr. McCows' testimony.  The RFC did considered limitations due to musculoskeletal or fibromyalgia symptoms by limited plaintiff to light work.  The RFC did include limitations due to plaintiff's allergies/contact dermatitis by including a limitation against exposure to rubber products or black dye.

The ALJ found that plaintiff's depression would result in mild limitations in her ability in the area of concentration, persistence and pace, thus finding that her depression was severe.  The psychiatric review technique utilized by the ALJ is not an RFC assessment but is used to rate the severity of mental impairments.  SOCIAL SECURITY RULING 96-8p.  The omission of any limitation related to plaintiff's depression appears to have been inadvertent and not likely to change the ALJ's decision.  Plaintiff herself reported that her depression would not keep her from working.  Although her husband is employed, and she testified at the 2004 hearing that she had insurance, plaintiff terminated both her water therapy and her psychiatric therapy.  At the time of her first application, she reported only hand problems as an impairment.  In her second application, she did not mention

14

depression and reported that she had to quit work because of the condition of her hands, and then the employer went out of business. In any event, a mild limitation in concentration, persistence, or pace in plaintiff's RFC would not preclude her performance of work that is not complex. Thus, it would not preclude plaintiff's performance of her past relevant work that was unskilled, *e.g.*, fast food service, fast food server/cook, cafeteria attendant, stayer (sewing machine - shoes), and crimping machine operator. *Compare Jens v. Barnhart*, 347 F.3d 209, 212-13 (7th Cir. 2003) (the Seventh Circuit found that deficiencies of concentration, persistence, or pace that occurred "often" was not inconsistent with semiskilled work).

Plaintiff argues that the ALJ was required to obtain vocational expert testimony in order to determine plaintiff's RFC and her past relevant work. It is the ALJ's responsibility to determine a claimant's RFC. Further, it has long been the law in the Eighth Circuit that once the decision is made that a claimant can perform her past relevant work, the services of a vocational expert are not necessary. *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001). Because plaintiff did not fulfill her burden of making a *prima facie* showing that she could not return to her past relevant work, the burden never shifted to the Commissioner and, thus, vocational testimony was not necessary. *Gaddis*, 76 F.3d at 896.

As to the requirements of plaintiff's past relevant work, the record includes testimony from three vocational experts about plaintiff's past relevant work and DICTIONARY OF OCCUPATIONAL TITLE (DOT) descriptions of plaintiff's past relevant work. Further, plaintiff filed two separate reports describing her past work, in addition to testifying about her past work.

WHEREFORE, for the reasons stated herein, the Commissioner's decision is affirmed.

15

/s/ Gary A. Fenner
GARY A. FENNER, JUDGE
United States District Court

DATED: March 7, 2006